UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

---

JULIE HOAGLAN
6861 Crocus Court, Apt. 3
Greendale, Wisconsin 53129

      Plaintiff,

v.

SL GREENFIELD, LLC
303 East Wacker Drive, Suite 2400
Chicago, Illinois 60601

      Defendant.

Case No.: 18-cv-1561

**JURY TRIAL DEMANDED**

---

## COMPLAINT

COMES NOW Plaintiff, Julie Hoaglan, by her counsel, WALCHESKE & LUZI, LLC, as and for a claim against Defendant, alleges and shows to the Court as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA").

2. This Court has supplemental jurisdiction over this matter pursuant to 28 U.S.C. § 1367 because this case involves claims under Wisconsin's Wage Payment and Collection Laws ("WWPCL"), and these claims are so related in this action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendant resides and/or operates its business in the Eastern District of Wisconsin and the unlawful

employment practices of which Plaintiff complains occurred within the Eastern District of Wisconsin.

## PARTIES AND COVERAGE

4. Plaintiff, Julie Hoaglan, is an adult female resident of the State of Wisconsin with a post office address of 6861 Crocus Court, Apt. 3, Greendale, Wisconsin 53129.

5. Defendant, SL Greenfield, LLC, was, at all material times herein, a commercial entity with a principal address of 303 East Wacker Drive, Suite 2400, Chicago, Illinois 60601.

6. Defendant, also commonly known as "Hickory Park Independent Living," is an independent living and assisted living facility that provides housing, services, and care to the elderly, aging, and geriatric population.

7. Defendant's physical location in the State of Wisconsin is located at 3933 South Prairie Hill Lane, Greenfield, Wisconsin 53228.

8. Defendant is owned, operated, and managed by Senior Lifestyle Corporation.

9. During the relevant time periods as stated herein, Defendant was engaged in "commerce" and/or its employees were engaged in "commerce," as that term is defined under the FLSA.

10. During the relevant time periods as stated herein, Defendant employed more than two (2) employees.

11. During the relevant time periods as stated herein, Defendant's annual dollar volume of sales or business exceeded $500,000.

12. During the relevant time periods as stated herein, Defendant was an "employer" as that term is defined under the FLSA and the WWPCL.

13. During the relevant time periods as stated herein, Plaintiff was "employed" by and/or an "employee" of Defendant, as these terms are defined under the FLSA and the WWPCL.

14. During the relevant time periods as stated herein, Plaintiff was engaged in commerce or in the production of goods for commerce.

**GENERAL ALLEGATIONS**

15. In approximately October 2015, Senior Lifestyle Corporation hired Plaintiff into the position of Caregiver working at Defendant.

16. During Plaintiff's employment with Defendant, Senior Lifestyle Corporation established the terms, conditions, work rules, policies, compensation, and procedures by which Plaintiff abided in the workplace.

17. From approximately October 2015 to January 2017, Plaintiff performed compensable work in the position of Caregiver at Defendant.

18. From approximately October 2015 to January 2017, Plaintiff performed compensable work in the position of Caregiver on behalf of Defendant and/or at Defendant's direction.

19. In approximately January 2017, Defendant promoted Plaintiff to the position of Health Unit Clerk.

20. From approximately January 2017 to early July 2017, Plaintiff performed compensable work in the position of Health Unit Clerk on behalf of Defendant and/or at Defendant's direction.

21. In approximately early July 2017, Plaintiff resigned her employment with Defendant.

22. During Plaintiff's employment with Defendant, Plaintiff reported directly to Defendant's Directors of Nursing, Kay Johnson, Megan Krohn, and Ashley Hall. These individuals reported directly to Noel Pakulski, Defendant's Executive Director, who reported directly to individuals employed by Senior Lifestyle Corporation.

23. At times during Plaintiff's employment with Defendant, Plaintiff reported directly to Pakulski during times when no individual was employed at Defendant in the position of Director of Nursing.

24. During Plaintiff's employment with Defendant, Defendant's workweek for FLSA and WWPCL purposes was Sunday through Saturday.

25. During the entirety of Plaintiff's employment with Defendant, Defendant compensated Plaintiff with an hourly rate of pay.

26. During the entirety of Plaintiff's employment with Defendant, Plaintiff primarily performed compensable work at Defendant's location in the State of Wisconsin, located at 3933 South Prairie Hill Lane, Greenfield, Wisconsin 53228.

27. During the entirety of Plaintiff's employment with Defendant, Plaintiff was a non-exempt employee under the FLSA and WWPCL.

28. During the entirety of Plaintiff's employment with Defendant, Plaintiff frequently worked in excess of forty (40) hours per workweek.

29. During the entirety of Plaintiff's employment with Defendant, Defendant knew or had knowledge that Plaintiff was frequently working in excess of forty (40) hours per workweek.

30. During the entirety of Plaintiff's employment with Defendant, Defendant compensated Plaintiff on a bi-weekly basis via paycheck.

31. During Plaintiff's employment with Defendant, Plaintiff generally worked six (6) to seven (7) days per workweek, approximately nine (9) to eleven (11) hours per work day.

32. During Plaintiff's employment with Defendant and prior to approximately January 2017, Plaintiff recorded her time worked each work day at Defendant via handwritten timesheets.

33. During Plaintiff's employment with Defendant and prior to approximately January 2017, Pakulski collected, reviewed, and/or approved the time recorded via Plaintiff's handwritten timesheets on a weekly basis.

34. During Plaintiff's employment with Defendant and prior to approximately January 2017 and on a weekly and/or bi-weekly basis, Defendant provided Plaintiff's time worked as reflected on her handwritten timesheets to Senior Lifestyle Corporation for final approval and payment.

35. During Plaintiff's employment with Defendant and prior to approximately January 2017, Plaintiff's handwritten timesheets did not accurately represent or reflect all hours worked and/or work performed at Defendant.

36. During Plaintiff's employment with Defendant and after approximately January 2017, Plaintiff recorded her time worked each work day at Defendant via Defendant's electronic timekeeping system.

37. During Plaintiff's employment with Defendant and after approximately January 2017, Plaintiff's record of time worked each work day at Defendant via Defendant's electronic timekeeping system was monitored, reviewed, and/or approved by Senior Lifestyle Corporation for final approval and payment to Plaintiff.

38. During Plaintiff's employment with Defendant and prior to approximately January 2017, Plaintiff's record of time worked each work day via Defendant's electronic timekeeping system did not accurately represent or reflect all hours worked and/or work performed at Defendant.

39. During practically the entirety of Plaintiff's employment with Defendant, Defendant, specifically Johnson, Krohn, Hall, and/or Pakulski, directed Plaintiff to perform off-the-clock work at Defendant.

40. During practically the entirety of Plaintiff's employment with Defendant, Johnson, Krohn, Hall, and/or Pakulski knew or had knowledge that Plaintiff was performing work off-the-clock at Defendant.

41. During practically the entirety of Plaintiff's employment with Defendant, Johnson, Krohn, Hall, and/or Pakulski knew or had knowledge that Plaintiff was performing work off-the-clock work at Defendant without receiving compensation for the off-the-clock work performed.

42. During Plaintiff's employment with Defendant, Johnson, Krohn, Hall, and/or Pakulski directed Plaintiff to perform continuous care for Defendant's residents off-the-clock.

43. During Plaintiff's employment with Defendant, Johnson, Krohn, Hall, and/or Pakulski directed Plaintiff to perform continuous care for Defendant's residents knowing that Defendant would not compensate Plaintiff for the off-the-clock work performed.

44. During Plaintiff's employment with Defendant and when Johnson, Krohn, Hall, and/or Pakulski directed Plaintiff to perform continuous care for Defendant's residents off-the-clock, Johnson, Krohn, Hall, and/or Pakulski routinely told Plaintiff, "We someone to do continuous care for [resident], but we can't pay you to do this," or words to this effect.

45. During Plaintiff's employment with Defendant and on the work days when Johnson, Krohn, Hall, and/or Pakulski directed Plaintiff to perform continuous care for Defendant's residents off-the-clock, Plaintiff usually recorded her hours worked during the normal or customary workday and then, in accordance with Johnson's, Krohn's, Hall's, and/or Pakulski's directive, performed compensable work off-the-clock overnight providing continuous care for Defendant's residents.

46. During Plaintiff's employment with Defendant, Krohn and Pakulski routinely directed Plaintiff to perform work off-the-clock each time an agency representative from the State of Wisconsin came (or was planning to come) to Defendant to conduct an investigation.

47. During Plaintiff's employment with Defendant and when Krohn and Pakulski directed Plaintiff to perform work off-the-clock when an agency representative from the State of Wisconsin came (or was planning to come) to Defendant to conduct an investigation, Plaintiff usually performed compensable work by completing (or backdating) paperwork at Defendant.

48. During Plaintiff's employment with Defendant and when Krohn and Pakulski directed Plaintiff to perform work off-the-clock when an agency representative from the State of Wisconsin came (or was planning to come) to Defendant to conduct an investigation, Krohn and Pakulski routinely told Plaintiff, "Clock out and help us with the paperwork," or words to that effect.

49. During Plaintiff's employment with Defendant and when Krohn and Pakulski directed Plaintiff to perform work off-the-clock when an agency representative from the State of Wisconsin came (or was planning to come) to Defendant to conduct an investigation, Plaintiff usually performed compensable work by physically completing (or backdating) paperwork alongside Krohn and Pakulski at Defendant.

50. During Plaintiff's employment with Defendant and when Krohn and Pakulski directed Plaintiff to perform work off-the-clock when an agency representative from the State of Wisconsin came (or was planning to come) to Defendant to conduct an investigation, Plaintiff usually spent approximately five (5) hours performing compensable work by physically completing (or backdating) paperwork at Defendant.

51. During Plaintiff's employment with Defendant, Krohn and Pakulski directed Plaintiff to perform work off-the-clock when an agency representative from the State of Wisconsin came (or was planning to come) to Defendant to conduct an investigation on approximately thirty (30) to forty (40) separate occasions.

52. During Plaintiff's employment with Defendant, Johnson, Krohn, Hall, and/or Pakulski routinely directed Plaintiff to perform work off-the-clock: on Holidays; during and/or for Defendant's marketing events; and during and/or for other special occasions or events at Defendant, such as banquets and resident birthday parties.

53. During Plaintiff's employment with Defendant, Pakulski routinely told Plaintiff and other employees of Defendant that it was "all hands on deck" for these occasions, referring to working on Holidays, during and/or for Defendant's marketing events, and during and/or for other events at Defendant, such as banquets and resident birthday parties.

54. During Plaintiff's employment with Defendant, Krohn, Hall, and Pakulski routinely directed Plaintiff to perform work off-the-clock on Holidays, during and/or for Defendant's marketing events, and during and/or for other events at Defendant, such as banquets and resident birthday parties, by telling Plaintiff, "Help out because we're short staffed," or words to that effect.

55. During Plaintiff's employment with Defendant, Krohn, Hall, and Pakulski routinely directed Plaintiff to perform work off-the-clock on Holidays, during and/or for Defendant's marketing events, and during and/or for other events at Defendant, such as banquets and resident birthday parties, by telling Plaintiff: "Clock out and help," "We can't have overtime," "Corporate is riding out ass about overtime," and, "We can't pay you for this," or words to that effect.

56. During Plaintiff's employment with Defendant and when Plaintiff performed work off-the-clock on Holidays, during and/or for Defendant's marketing events, and during and/or for other events at Defendant, such as banquets and resident birthday parties, she was physically working alongside other employees of Defendant, who were also working off-the-clock.

57. During Plaintiff's employment with Defendant and when Plaintiff performed work off-the-clock on Holidays, during and/or for Defendant's marketing events, and during and/or for other events at Defendant, such as banquets and resident birthday parties, she was physically baking, prepping, and serving food to Defendant's residents and/or doing activities with Defendant's residents.

58. During Plaintiff's employment with Defendant, Plaintiff performed off-the-clock work on Holidays, during and/or for Defendant's marketing events, and during and/or for other events at Defendant, such as banquets and resident birthday parties, on at least approximately one (1) separate occasion per workweek, for approximately five (5) to ten (10) hours on each occasion.

59. During Plaintiff's employment with Defendant, Pakulski routinely directed Plaintiff to perform work off-the-clock by performing all of the following duties: storing medication; conducting resident assessments; performing data entry; completing paperwork, such as care plans, medical charting, and prescription orders; shopping for Defendant and/or

Defendant's residents; and cleaning – particularly cleaning a resident's room when they died, which usually took approximately one (1) hour.

60. During Plaintiff's employment with Defendant and when Pakulski routinely directed Plaintiff to perform work off-the-clock by performing the following duties listed in the immediately preceding Paragraph, Pakulski routinely told Plaintiff, "You have to clock out and then help me do this," or words to that effect, and often physically performed said duties alongside Pakulski.

61. During Plaintiff's employment with Defendant, Plaintiff routinely performed work off-the-clock while "on call," such as communicating (via telephone and e-mail) with Pakulski, Defendant's employees, Defendant's residents (and residents' families), and various pharmacies.

62. During Plaintiff's employment with Defendant, Plaintiff routinely performed work off-the-clock while "on call" at Pakulski's direction and/or with Pakulski's knowledge.

63. During Plaintiff's employment with Defendant and when Plaintiff routinely performed work off-the-clock while "on call" at Pakulski's direction and/or with Pakulski's knowledge, Pakulski never informed Plaintiff to record this time worked on Plaintiff's handwritten timesheets or via Defendant's electronic timekeeping system.

64. During Plaintiff's employment with Defendant, Plaintiff verbally complained to Pakulski that she (Plaintiff) was constantly working at Defendant and not being compensated for her work. Pakulski would usually respond, "Corporate doesn't want overtime," or words to that effect.

65. During Plaintiff's employment with Defendant, Defendant suffered or permitted Plaintiff to work without appropriately and lawfully compensating her at an overtime rate of pay for all hours worked in excess of forty (40) hours in a workweek.

66. During Plaintiff's employment with Defendant, Plaintiff's paychecks did not properly or lawfully compensate her for all hours worked in a workweek, including at an overtime rate of pay for those hours worked in excess of forty (40) hours in a workweek.

67. Defendant knew or should have known that Plaintiff must be compensated with overtime pay at a rate of time and one half for all hours worked (and for all hours Defendant suffered or permitted her to work) in excess of forty (40) hours in a workweek in accordance with the FLSA and the WWPCL.

68. Defendant had a statutory duty to comply with the FLSA and to remedy FLSA violations of which it was aware and/or of which it should have been aware.

69. Defendant owes Plaintiff earned and unpaid wages, including at an overtime rate of pay for work performed during her employment and for which she was not properly and lawfully compensated, plus an equal amount for liquidated damages, in an amount to be determined.

### FIRST CAUSE OF ACTION – FLSA VIOLATIONS
### (OVERTIME PAY – OFF-THE-CLOCK WORK)

70. Plaintiff reasserts and incorporates by reference all paragraphs set forth above as if restated herein.

71. Section 207(a)(1) of the FLSA regulates, among other things, the payment of an overtime premium by employers whose employees are engaged in commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce.

72. At all times material herein, Plaintiff was entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. § 201 *et seq.*

73. During the entirety of her employment with Defendant, Plaintiff primarily performed non-exempt duties in her positions of Caregiver and Health Unit Clerk and, thus, was entitled to overtime premium pay of time and one half for each hour worked in excess of forty (40) hours in a workweek.

74. Defendant violated the FLSA by unlawfully failing to compensate Plaintiff with overtime premium pay of time and one half for each hour worked in excess of forty (40) hours in a workweek.

75. Defendant's failure to properly and legally compensate Plaintiff for all compensable work performed, including at the correct overtime rate of pay, was willfully perpetrated. Defendant did not act in good faith and with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result thereof, Plaintiff is entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime premium pay described above pursuant to Section 216(b) of the FLSA. Alternatively, should the Court find that Defendant acted reasonably and with good faith in failing to pay overtime premium pay wages, Plaintiff is entitled to an award of pre-judgment interest at the applicable legal rate.

76. As a result of the aforesaid violations of the FLSA's provisions, overtime compensation has been unlawfully withheld from Plaintiff by Defendant.

77. Plaintiff is entitled to damages equal to the mandated minimum wage and/or overtime premium pay within the three (3) years preceding the date of filing of the Complaint, ECF No. 1, plus periods of equitable tolling because Defendant acted willfully and knew or showed reckless disregard of whether its conduct was prohibited by the FLSA and otherwise engaged in wrongful conduct that prevented Plaintiff from asserting her claims against Defendant.

78. Pursuant to the FLSA, 29 U.S.C. § 216(b), successful plaintiffs are entitled to reimbursement of the costs and attorneys' fees expended in successfully prosecuting an action for unpaid wages and overtime wages.

### SECOND CAUSE OF ACTION – WWPCL VIOLATIONS
### (OVERTIME PAY – OFF-THE-CLOCK WORK)

79. Plaintiff reasserts and incorporates by reference all paragraphs set forth above as if restated herein.

80. At all times material herein, Plaintiff was an employee of Defendant within the meaning of Wis. Stat. § 109.01(1r), Wis. Stat. §103.001(5), and Wis. Stat. §104.01(2)(a).

81. At all times material herein, Defendant was an employer of Plaintiff within the meaning of Wis. Stat. § 109.01(2), Wis. Stat. §103.001(6), Wis. Stat. §104.01(3)(a), and Wis. Admin. Code § DWD 272.01(5).

82. At all times material herein, Defendant employed Plaintiff within the meaning of Wis. Stat. §§109.01 *et seq.*, 103.01 *et seq.*, 104.01 *et seq.*, and Wis. Admin. Code § DWD 272.01.

83. At all times material herein, Plaintiff regularly performed activities that were an integral and indispensable part of her principal activities without receiving compensation for these activities, including at an overtime rate of pay.

84. During Plaintiff's employment with Defendant, Plaintiff regularly worked hours in excess of forty (40) per workweek for which she was not compensated with overtime premium pay.

85. The foregoing conduct, as alleged above, constitutes willful violations of the WWPCL.

86. As set forth above, Plaintiff sustained losses in compensation as a proximate result of Defendant's violations. Accordingly, Plaintiff seeks damages in the amount of her unpaid compensation, injunctive relief requiring Defendant to cease and desist from its violations of the Wisconsin laws described herein and to comply with them, and such other legal and equitable relief as the Court deems just and proper. Under Wis. Stat. § 109.11, Plaintiff may be entitled to liquidated damages equal and up to fifty percent (50%) of the unpaid wages.

87. Plaintiff seeks recovery of attorneys' fees and the costs of this action to be paid by Defendant, pursuant to the WWPCL.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

1. Order Defendant to make Plaintiff whole by providing reimbursement for unpaid wages, including but not limited to overtime wages, and pre-judgment and post-judgment interest, and for all times spent performing compensable work for which Plaintiff was not properly paid as provided under the FLSA and WWPCL;

2. Grant to Plaintiff attorneys' fees, costs, and disbursements as provided by statute;

3. Grant to Plaintiff liquidated damages against Defendant; and

4. Grant to Plaintiff whatever other relief this Court deems necessary and proper.

**PLAINTIFF DEMANDS A JURY AS TO ALL TRIABLE ISSUES.**

Dated this 3rd day of October, 2018

                          WALCHESKE & LUZI, LLC
                          Counsel for Plaintiff

                          **_s/ Scott S. Luzi_**
                          James A. Walcheske, State Bar No. 1065635
                          Scott S. Luzi, State Bar No. 1067405
                          David M. Potteiger, State Bar No. 1067009
                          Matthew J. Tobin, State Bar No. 1097545

WALCHESKE & LUZI, LLC
15850 W. Bluemound Road, Suite 304
Brookfield, Wisconsin 53005
Phone: (262) 780-1953
Fax: (262) 565-6469
jwalcheske@walcheskeluzi.com
sluzi@walcheskeluzi.com
dpotteiger@walcheskeluzi.com
mtobin@walcheskeluzi.com